UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

REINALDO MORALES, JR.

        Petitioner,

                                                                            Case No. 1:08-CV-914

v.                                                                            (Criminal Case No. 1:06:CR:50)

UNITED STATES OF AMERICA,              HON. GORDON J. QUIST

        Respondent.
_____/

## OPINION

Petitioner filed a Motion to Vacate, Set Aside or Correct Sentence By a Person in Federal Custody pursuant to 28 U.S.C. § 2255. The Court must promptly undertake a preliminary review of the motion to determine whether it plainly appears from the motion, attached exhibits and record of prior proceedings that Petitioner is not entitled to relief. Rule 4, Rules Governing § 2255 Cases. If so, the Court shall order its summary dismissal. *Id.* Rule 4 requires dismissal of petitions that raise legally frivolous claims or contain palpably incredible or false allegations. *See Carson v. Burke*, 178 F.3d 434, 436-37 (6 th Cir. 1999) (applying Rule 4 to petition filed under 28 U.S.C. § 2254). After conducting the review required by Rule 4, the Court concludes Petitioner is not entitled to relief.

**I.    Procedural History**

Petitioner was arrested on February 15, 2006, following a traffic stop in which police discovered he possessed approximately 37 grams of cocaine base. Petitioner was subsequently indicted for possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B)(iii). Petitioner was arrested again in June 2006 after officers

responded to a 911 call and discovered, among other things, that Petitioner possessed 1-1/2 grams of cocaine base. The prosecution agreed during plea negotiations not to charge Petitioner with a second count of possession if he pled guilty to the single count already pending. Petitioner pled guilty before a Magistrate Judge on August 9, 2006, to possession with intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B)(iii). This District Court accepted the plea on August 24, 2006, and on November 14, 2006, sentenced Petitioner to 168 months imprisonment with five years' supervised release, fined him $2,280, and ordered him to pay a special assessment of $100. He timely appealed to the Court of Appeals for the Sixth Circuit, alleging that his plea was invalid, that his sentence was unreasonable, and that he was denied effective assistance of counsel.

The Sixth Circuit determined Petitioner's plea was knowing, voluntary, and intelligent, reviewed the totality of the circumstances surrounding the plea, and held that it was valid. The Sixth Circuit also held that the plea agreement's waiver of Petitioner's right to appeal his sentence and attack it collaterally was valid. The court declined to address Petitioner's claim of ineffective assistance of counsel. Petitioner subsequently filed the instant motion to vacate his sentence.

## II. Standard of Review

Petitioner must demonstrate "an error of constitutional magnitude which had a substantial and injurious effect" on the proceedings, a "'fundamental defect which inherently results in a complete miscarriage of justice'" or "an error . . . that amounts to a violation of due process. *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471 (1968)). His claims must be established by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

## III. Analysis

Petitioner's motion lists nineteen grounds he claims entitle him to relief, although he has only briefed eleven. Petitioner's briefs are a rambling, interwoven morass of intermingled allegations and arguments, making his claims difficult to separate. However, they can be divided into three categories: 1) ineffective assistance of counsel; 2) prosecutorial misconduct; and 3) judicial misconduct.

### A. Validity of Sentence

Some of Petitioner's claims attack the validity of his sentence while others attack the validity of the guilty plea itself. Petitioner's collateral attacks on the validity of his sentence are barred because he waived them in his plea agreement, *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001), and that waiver has already been adjudicated effective by the Sixth Circuit. To the extent his claims attack the validity of his sentence, the Court rejects them.

### B. Claims not Raised on Direct Appeal are Waived

Claims not raised on direct appeal are waived unless Petitioner establishes cause for his failure to do so and actual prejudice arising from the alleged error. *United States v. Frady*, 456 U.S. 152, 168, 102 S.Ct. 1584, 1594 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2507 (1977). Absent a demonstration of cause and prejudice, procedurally defaulted claims can only be raised in a § 2255 motion upon a compelling demonstration of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 316, 115 S.Ct. 851, 861 (1995). Petitioner does not claim he is actually innocent. Petitioner has made no attempt to demonstrate cause for his failure to raise these issues on direct appeal. Consequently, those claims are denied.

### C. Judicial Misconduct

Petitioner's claim that the Court communicated ex parte with a witness who testified at the sentencing is barred in part by Petitioner's waiver in the plea agreement because it seeks to undermine the validity of Petitioner's sentence. It is also barred because Petitioner did not raise this issue on direct appeal and has established neither cause for his failure to do so nor actual prejudice arising from the alleged communication. *Frady*, 456 U.S. at 168, 102 S.Ct. at 1594; *Wainwright*, 433 U.S. at 87, 97 S.Ct. at 2507. This claim is also rejected because it is facially specious and patently false. Petitioner quotes the Court as saying, during Ms. Hughes's testimony:

> I'm sorry, Mr. Houghtaling. I'm going to take a break. I hate to interrupt you, but we have been here for a couple of hours because we had a matter just before you can in. I have sort of a deal with her and there is something I want to check out before five o'clock.

Sentencing Tr. at 77. Petitioner claims the Court's statement is proof of ex parte communication between Hughes and the Court. The Court was not referring to Hughes, nor does the record indicate it was. In fact, it clearly indicates the Court was referring not to Hughes, but to an agreement entered into previously.[1] Accordingly, all claims alleging ex parte communication between the Court and Ms. Hughes are rejected. *United States of America v. Earley*, 746 F.2d 412, 417-18 (8th Cir. 1984).

Petitioner claims the Court failed to advise of him of his Fifth Amendment right not to incriminate himself and to warn him that his statements could be held against him. This is incorrect. Petitioner was apprised of his rights and acknowledged him understood them at his plea hearing. Change of Plea Hr'g Tr. at 13-16. The Court also informed him, and he acknowledged he

---

[1] The "her" referred to is the court reporter. The "deal" is that the court would give its reporter a break every 1½ hour.

4

understood, that he was waiving these rights by pleading guilty. *Id.* The Court accordingly rejects this argument.

### D. Prosecutorial Misconduct

Petitioner also claims he was induced to enter into the plea agreement by the prosecutor's misconduct. However, Petitioner's claim that he was prejudiced by prosecutorial misconduct is barred because Petitioner has not established cause for his failure to raise this issue on direct appeal. *Frady*, 456 U.S. at 168, 102 S.Ct. at 1594; *Wainwright*, 433 U.S. at 87, 97 S.Ct. at 2506. Assuming, *arguendo*, it is not barred, the Court rejects this claim because Petitioner has presented no evidence of misconduct and the record contradicts his claim. Petitioner argues that the prosecutor told him the police found 1-1/2 grams of cocaine base at his girlfriend's house during Petitioner's second arrest, and that he agreed to plead guilty at least in part because the prosecutor agreed not to charge him with a second count of possession with intent to distribute as part of the plea agreement. Petitioner claims he learned at the sentencing hearing that the 1-1/2 grams of cocaine base allegedly found during his second arrest did not, in fact, exist. He cites the testimony of Officer Tom May at the sentencing hearing. Officer May never testified that no cocaine base was found at Petitioner's second arrest; he simply made no mention of its discovery. Officer May discussed only the quantity of powder cocaine residue found during the second arrest (less than one-tenth of a gram) and a small ball of cocaine base Petitioner's girlfriend testified about, but was apparently flushed down the toilet as the police entered. Sentencing Tr. at 13, 16. Furthermore, Petitioner's claim is rebutted by his allocution. When asked about the discovery of drugs at his second arrest, he stated, "but, uhm, yes, they did find 1-1/2 grams of crack." Change of Plea Hr'g Tr. at 32. This was no equivocal admission. Petitioner gave no indication that although he accepted the government's assertion as true, he had no independent knowledge of it. Finally, his claim that he was deceived into believing

5

the police found 1-1/2 grams of cocaine base which did not, in fact, exist is belied by the verity that if he had no cocaine base, he would have known the prosecutor's assertion was false. The Court accordingly rejects Petitioner's argument that his guilty plea was invalid because it was induced by the prosecutor's misrepresentation.

Petitioner alleges he was induced to plead guilty by the government's failure to disclose exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963). The Court rejects this argument. The only exculpatory "fact" Petitioner alleges is the non-existence of 1-1/2 grams of cocaine base the police found at his second arrest. Petitioner has offered no evidence to support this allegation. Furthermore, he admitted under oath without reservation that this cocaine base was found. The *Brady* Court found "no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court." *Id.* at 757. Accordingly, the Court rejects this argument.

Petitioner also claims the prosecution should have disclosed that witness Hughes would testify she purchased cocaine base from Petitioner on a regular basis for three years, and that witness Pugh would testify that currency found at Petitioner's second arrest belonged to Petitioner. This evidence relates not to Petitioner's guilt or innocence, but to facts establishing his offense score under the sentencing guidelines. The substance of Hughes's testimony was in the pre-sentence investigation report (PSI), which Petitioner received as required by law. The PSI also attributes the currency to Petitioner and includes it in his offense score. Petitioner received all the disclosure he was entitled to.

Petitioner claims the prosecution violated its promise that he would receive credit for accepting responsibility for his crime. This is untrue. Despite the fact that Pugh's testimony at sentencing revealed that Petitioner attempted to persuade Pugh to give false testimony, the Court

6

granted Petitioner two of the three points he could have received for accepting responsibility. Sentencing Tr. at 93-4. The plea agreement permitted the government to object "if it subsequently learn[ed] of conduct by the Defendant that is inconsistent with the criteria set forth" for acceptance of responsibility. The government did not object. Instead, it only declined to move for a third point, which was entirely consistent with the agreement.

Furthermore, Petitioner has not shown that these alleged failures to disclose prejudiced him. There is no indication he would not have pled guilty had he known he would have received the sentence he received. He understood he would be sentenced according to the guidelines, that the Court was not bound by any promises anyone may have made him concerning his sentence, that his attorney's attempt to calculate his offense score was merely an estimate, that his actual offense score could be higher, and that he could be sentenced to as many as 40 years in prison. Change of Plea Hr'g Tr. at 5-10. It is clear Petitioner understood how he would be sentenced and knew the facts relevant to its determination. Furthermore, although the PSI slightly underestimated Petitioner's offense score, Petitioner actually received a sentence within the range calculated by the PSI, thanks to the Court's downward departure. The prosecution honored its agreement with Petitioner fully, Petitioner understood how he would be sentenced, and Petitioner pled guilty with full knowledge of the facts that could affect his offense score. For the aforementioned reasons the Court concludes Petitioner has not demonstrated he was induced to plead guilty by any of the alleged prosecutorial errors.

E.   **Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel, Petitioner must establish that his attorney's performance was, in the totality of the circumstances, unreasonable under prevailing professional norms and that there is a "reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068 (1984). A petitioner challenging a guilty plea satisfies the second prong of this test by showing that, were it not for counsel's alleged errors, he would not have pled guilty but would have insisted upon going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370 (1985).

Petitioner fails to establish either that his attorney's performance was unreasonable or that he was prejudiced by it. His claim of ineffective assistance rests on the following assertions: 1) that with proper investigation his attorney would have discovered that the government did not find 1-1/2 grams of cocaine base during the second arrest; 2) that his attorney should have known that Hughes, whom Petitioner apparently expected to testify favorably, testified before the grand jury that she had regularly purchased cocaine base from Petitioner for three years and would testify similarly at Petitioner's sentencing; 3) that his attorney should have known that Petitioner's girlfriend, Pugh, would contradict statements she made to him previously and testify that cash found at her home during Petitioner's second arrest belonged to Petitioner; 4) that his attorney should have objected to the Court's alleged ex parte communication with Hughes; 5) that his attorney did not apprise him of his right to remain silent; and 6) that his attorney did not discuss the sentencing guidelines with him.

As discussed above, Petitioner remains far from demonstrating any of these alleged facts by the required clear and convincing evidence. There is no evidence suggesting the government's claim that it found 1-1/2 grams of cocaine base is false. Petitioner admitted it was true. Even if it were not, his attorney's reliance on Petitioner's admission was reasonable. Likewise, the Court did not communicate ex parte with Hughes, nor is there evidence to suggest otherwise. Petitioner was

not entitled to copies of Hughes's grand jury transcript. The substance of her testimony was in the PSI. The record indicates his attorney was aware of the facts to which Hughes testified.

Pugh contradicted statements she had previously made to Petitioner's attorney. The record suggests Petitioner had persuaded Pugh to testify falsely that the currency found was hers. Sentencing Tr. at 93. Given that Pugh and the Petitioner apparently conspired to present false testimony, his attorney can hardly be faulted for failing to discover this before she contradicted herself at the sentencing. Petitioner's own deception prevented his attorney from discovering the truth.

Petitioner's claim that his attorney failed to inform him of his right to remain silent and to discuss the sentencing guidelines with him is belied by the record. Change of Plea Hr'g Tr. at 5-10, 13-16. The Court concludes for the aforementioned reasons that Petitioner's attorney's performance was reasonable. Furthermore, Petitioner has not presented any evidence that he was induced to plead guilty by any of these alleged errors. He offers only his conclusory statements that he was. It is clear that Petitioner entered his plea with his eyes open. Accordingly, the Court finds that Petitioner was not denied effective assistance of counsel.

Under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473,

9

120 S. Ct. 1595 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." For the reasons stated above, the Court finds that reasonable jurists could not find that this Court's dismissal of Petitioner's claim was debatable or wrong. Thus, the Court will deny Petitioner a certificate of appealability.

## Conclusion

For these reasons, Petitioner's § 2255 Motion will be DENIED. A certificate of appealability will be DENIED.

A separate Order will issue.

Dated: December 8, 2008                /s/ Gordon J. Quist
                                         GORDON J. QUIST
                                       UNITED STATES DISTRICT JUDGE